EMILY WARNE, Respondent, v. THE BROOKLYN HEIGHTS RAILROAD COMPANY and BROOKLYN CITIZEN, Appellants.

Second Department, December 22, 1916.

Negligence — collision between street car and wagon — injury to passenger by shaft of wagon puncturing side of car — evidence — damages.

Action by a passenger on a street car against the street car company and the owner of a horse and wagon for injuries caused by the shaft of the wagon puncturing the side of the car in which she was sitting during a collision at the intersection of streets. Evidence examined, and *held*, to justify findings of negligence on the part of the defendants, and that a verdict for $3,000 is not so excessive that it should be disturbed.

APPEAL by the defendants, The Brooklyn Heights Railroad Company and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 6th day of May, 1916, upon the verdict of a jury for $3,000, and also an appeal by the defendant Brooklyn Citizen from an order entered in said clerk's office on the 25th day of May, 1916, denying its motion for a new trial made upon the minutes.

*D. A. Marsh* [*George D. Yeomans* with him on the brief], for the appellant the Brooklyn Heights Railroad Company.

*Henry E. Heistad,* for the appellant the Brooklyn Citizen.

*Vine H. Smith,* for the respondent.

THOMAS, J.:

The plaintiff, a passenger on the car of one defendant, was injured by the shaft of a wagon of the other defendant puncturing the side of the car. The collision was at the intersection of Third avenue and Pacific street, in Brooklyn. The plaintiff was near the center of the car and on its left-hand side, towards which the horse and wagon were approaching. The defendant railroad company withdrew from the trial when the plaintiff had rested and its motion for nonsuit had been denied. Therefore, it is to be affected only by the record as it then was. The car was moving southerly and

the horse and wagon westerly. The speed of the car is described as "moderate" or "slow," or "very slow;" "not going very fast;" that of the horse "pretty quick," "fast," "as fast as he could possibly go;" a "fast trot." The collision was in Pacific street, and as the wagon was coming near the middle of Pacific street, and the shaft hit the car about its center, the collision must have been near the center of the street. Hence one-half of the length of the car had passed the point of collision in the street, and the car was moving at speed that could not be regarded as negligent as between the two vehicles. Moreover, the car had so occupied the street that it was entitled to preference in passage. The next step in the inquiry is, whether as to the passenger the car was negligently moved into Pacific street, inasmuch as opportunity of prior passage must yield to the safety of those carried. When the car was near the first corner of Third avenue and Pacific street, the wagon was approaching at what to the plaintiff and her witnesses appeared a fast speed. But it is essential to know just how the situation would appear to the motorman using due care. If, when Pacific street opened up to him, he saw the horse so near and coming so fast and so negligently driven as to threaten or admit of collision, he should have adopted a prudent course. He should have stopped at the corner or proceeded so slowly as to let the horse and wagon precede, or should have warned the driver and thereby averted his attempt to do so. That might be yielding the right of way to a wrongdoer. But a carrier may not vindicate its rights against even a trespasser, at the expense of a passenger. It should be kept in mind that the motorman approached the corner with his car in motion without intention to stop, and conscious of his right to pass in front of teams that had not acquired by occupation a preference in crossing. It was also his right to expect vehicles going transversely to act prudently according to their environment. The car stopped about the center of Pacific street. Such is the testimony given by the plaintiff and her sister, and by Weber on the rear platform, who says also that the rear end of the car was "about the center of the street when it stopped." That indicates moderate movement of the car. But the initial

question is, where was the wagon when the motorman could look into Pacific street? The plaintiff and her sister were a half, and their witness Weber a whole, car length behind the motorman. The plaintiff testified that when she was attracted to the wagon it was twenty-five or thirty feet away from the street, and that the car was then "Just about past that bakery to notice it, that is all." She must refer to her location in the car, for later she adds, "We were just coming past that building so we could see up that street." The motorman then must have been a half car length past the corner. But she varies the distance of the wagon from the car, estimating it at fifty feet or more, and to the inquiry "Seventy-five feet?" she answered, "I don't know. It was quite a ways up the street. That is all I can tell you." Later, to an inquiry how much of the car was in Pacific street when she saw the wagon seventy-five feet away, she answered, "I don't know. I could not tell you that," and then she was asked, "When the car just passed that building it was — you saw the wagon about seventy-five feet away coming down Pacific Street? A. Away up the street. I don't know whether it was seventy-five feet or not." Plaintiff's witness Weber, on the rear of the car, said that he saw the horse and wagon about the depth of the corner building, which he estimated at seventy-five feet, and that "the part of the car I was on was — had not crossed the corner yet. * * * I should judge it was pretty near maybe twenty-five feet from the corner." Plaintiff's sister testified that when she saw the horse seventy-five feet on Pacific street the car was just leaving the corner of Pacific street. The result of the evidence most favorable to the carrier is that when the horse was seventy-five feet distant the center of the car was near the corner. Hence, when the motorman passed the corner the horse was still farther away. Not only was the horse up Pacific street, but there was a track and further intervening space, as the car was on the right and south-bound track. Under such circumstances was the jury warranted in finding that the car proceeded negligently to the point of collision? It could and should find on that limited evidence that, as between vehicles, the car was moved with

due care, but not necessarily with the diligence owing the passenger. The railroad's duty toward the traveler in Pacific street and to its passenger was described carefully by the court. As to the carrier, the problem is whether, when the car reached a point where the motorman could look up the street and see a horse and wagon coming as rapidly and as recklessly as the jury could infer was the case, and something more than seventy-five feet away, the car should have gone forward as it did. How much farther away than seventy-five feet the horse was, could be inferred with approximate accuracy by the fact that the motorman was some half car length ahead of the plaintiff, who at the corner saw the horse seventy-five feet away. It is the ungoverned oncoming of the horse and the unheeding failure of the driver to check him that gave the situation an alarming aspect, which should have been regarded by the motorman, even at the cost of delay. Hence it is concluded that, in the present state of the evidence, the court did not err in regarding the issue as one for the jury. The evidence as above discussed also bears upon the negligence of the driver of the horse. But the other defendant offered evidence that tended to cast in a degree the blame upon the railroad company. The trend of it is that the horse was old and much used on that day, and driven slowly, with a signal to the motorman of the driver's intention to pass in front of the car, which, arrested at the corner, started up and suddenly increased its speed and so overrode the horse and wagon. The jury is justified in its finding of negligence upon the whole evidence. The damages are not excessive in the sense that this court should disturb them.

The judgment and order should be affirmed, with costs.

Present — JENKS, P. J., THOMAS, CARR, STAPLETON and PUTNAM, JJ.

Judgment and order unanimously affirmed, with costs.